IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br>v.<br><br>MARCUS DUANE WHITE,<br><br>Defendant(s). | CASE NO. 5:11-cr-00501 PSG<br><br>**ORDER REVERSING DECISION OF MAGISTRATE JUDGE; GRANTING PLAINTIFF'S MOTION FOR REVOCATION**<br><br>[Docket Item No. 21] |

Appellant United States of America (the "Government") appeals to the district court an order dismissing a misdemeanor information under California Penal Code § 1385(a). For the reasons explained below, the order of the magistrate judge will be reversed, and the Government's Motion for Revocation will be granted.

**I.   Factual and Procedural Background**

Defendant Marcus Duane White was cited for driving with a suspended license within the NASA/Ames Research Center in Mountain View, California. White was thereafter charged with a misdemeanor violation of Vehicle Code § 14601.2, a California state statute prosecutable by the federal government under the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13(a).

The magistrate judge assigned to the case dismissed the charge against White "in the furtherance of justice" pursuant to California Penal Code § 1385(a), reasoning that § 1385 is assimilated by the ACA as an "aspect of state substantive criminal law."

The Government argues that because § 1385(a) is inconsistent with federal law and neither defines the elements of a crime nor authorizes a punishment, the magistrate judge erred in dismissing the charge against White "in the furtherance of justice." Upon review de novo, this court agrees and reverses the magistrate judge's order.[1]

## II.   California Penal Code § 1385

California Penal Code § 1385(a) provides that a "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."

That statute, along with Penal Code § 1386,[2] "codify California's rejection of the English rule of nolle prosequi, under which the prosecutor alone had authority to discontinue a prosecution, in favor of granting sole authority to the courts to dismiss actions in furtherance of justice." People v. Bonnetta, 46 Cal. 4th 143, 148 (2009) (citing People v. Tenorio, 3 Cal. 3d 89, 92-93 (1970)). Thus, in California, "[w]hen the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility." People v. Superior Court (Romero), 13 Cal. 4th 497, 517 (1996). "In other words, dismissal - for whatever reason - is a judicial rather than an executive function." Id. at 515.

## III.   The ACA

The ACA makes state criminal laws and punishments applicable in federal courts exercising territorial jurisdiction over federal enclaves. See 18 U.S.C. § 13(a). "The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." Lewis v. United States, 523 U.S. 155, 160 (1998). Specifically, the statute provides, in pertinent part:

---

[1] Since the issue presented by this appeal is a question of law, the magistrate judge's determination is reviewed de novo by this court. Fed. R. Crim. P. 58(g)(2)(D) ("The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."); United States v. Burkholder, 590 F.3d 1071, 1074 (9th Cir. 2009).

[2] "The entry of a nolle prosequi is abolished, and neither the Attorney General nor the district attorney can discontinue or abandon a prosecution for a public offense, except as provided in Section 1385." Cal. Penal Code § 1386.

2
CASE NO. 5:11-cr-00501 PSG
ORDER REVERSING DECISION OF MAGISTRATE JUDGE; GRANTING PLAINTIFF'S MOTION FOR REVOCATION

> Whoever within or upon [a federal enclave] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

All state criminal statutes are not assimilated, however. "[F]ederal courts are not required to follow specific provisions of state law which go beyond establishing the elements of an offense and the range of punishment." United States v. Sain, 795 F.2d 888, 890 (10th Cir. 1986); see also United States v. Roberts, 845 F.2d 229, 228 (9th Cir. 1988). Furthermore, "[t]he ACA will not assimilate a state law which is inconsistent with federal policies into federal law." Blackburn v. United States, 100 F.3d 1426, 1435 (9th Cir. ) (citing Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 389-90 (1944)).

**IV.   Analysis**

Looking first at the issue of inconsistency, the Government notes that the Federal Rules of Criminal Procedure (the "Rules"), rather than state procedural laws, exclusively govern criminal proceedings in federal court. The first provision of Rule 1 clarifies that "[t]hese rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States." Fed. R. Crim. P. 1(a)(1). Given this exclusive application, the Government then points out that only one rule, Rule 48, allows for sua sponte dismissal to remedy "unnecessary delay." Fed. R. Crim. P. 48(b). Thus, because the Rules do not allow for dismissals in the interest of justice and only allow for sua sponte dismissals under specific circumstances, the Government concludes that § 1385 directly conflicts with federal law[3] and cannot be assimilated under the ACA.

White disagrees with the Government's characterization of direct conflict between Rule 48 and § 1385. He argues that application of Rule 48 is limited to cases of "unnecessary delay" and is not meant to prohibit the court's ability to dismiss on other grounds not specified. Accordingly,

---

[3] "The Federal Rules of Criminal Procedure have the effect of law . . . ." Ochoa v. United States, 167 F2d 341, 345 (9th Cir. 1948).

3
CASE NO. 5:11-cr-00501 PSG
ORDER REVERSING DECISION OF MAGISTRATE JUDGE; GRANTING PLAINTIFF'S MOTION FOR REVOCATION

White contends that the federal court's inherent supervisory powers, although not codified in the Rules, provides a sufficient basis for dismissal in the furtherance of justice.

White is correct that § 1385 does not directly conflict with Rule 48. "[A]n appellate court must look first to the plain meaning of the text when interpreting a Federal Rule of Criminal Procedure[.]" United States v. Fort, 472 F.3d 1106, 1110 (citing United States v. John Doe, Inc., 481 U.S. 102, 109 (1987)). The plain meaning of Rule 48 is to confer upon the court a particular power to dismiss, not to take another power away. To the extent the Government reads that type of limiting language into Rule 48, it reads too much.

But that conclusion does not end the matter, since this issue is better framed with reference to the existence of the Rules themselves. In that regard, the question becomes whether the absence of federal authority allowing for unqualified dismissals in the furtherance of justice means that federal judges lack such a power, inherent or otherwise.

Federal judges do lack such a power. Indeed, the absence of a Rule allowing for dismissals in the furtherance of justice reflects the historical inability of judges to dismiss on that ground at common law here or in England. United States v. Weinstein, 452 F.2d 704, 715-716 (2nd Cir. 1971). Moreover, the exclusion from the Rules of authority similar to § 1385 has been determined a purposeful one.[4] As aptly explained by the Second Circuit:

> Where previously recognized powers were thought appropriate for inclusion in the rules, this was expressly done. Most relevant for our purposes, the three rules providing for termination of a prosecution once a jury has been impaneled are all embodiments of such powers: Rule 29 is an expression of the common law power to acquit for insufficiency of the evidence; Rule 34, arrest of judgment, has recently been interpreted as exactly carrying forward its common law predecessor . . . and Rule 48(b), dismissal by the court for unnecessary delay, was said by the Advisory Committee to be "a restatement of the inherent power of the court to dismiss a case for want of prosecution" . . . . Moreover, the authority for the Criminal Rules, now 18 U.S.C. § 3771, specifically provides that "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Thus, even if some other source had given a judge authorization to terminate a prosecution on the basis here suggested, this would be

---

[4] Notably, the Advisory Committee of the Judicial Conference considered, but rejected, an expansion of Rule 48(b) to allow for dismissals which "serve the ends of justice." United States v. Correia, 531 F.2d 1095, 1100 n.6 (1st Cir. 1976).

> terminated in an area which the Rules have occupied to such an extent as here.  If the interests of justice would be served by bestowing so broad a power as that here invoked, a matter on which reasonable minds may differ, the Supreme Court's power to amend the Rules is adequate to that end.

Id. at 715.

It is, therefore, the current formation of the Rules which prevent an exercise by the court of the power to dismiss a criminal charge sua sponte for reasons other than those specified rather than some particular inconsistency with an existing rule.  Had the Supreme Court meant to bestow on the court the ability to dismiss in the furtherance of justice, the Rules would today provide for it.  Since they do not, the dismissal by the magistrate judge cannot be supported based on an inherent supervisory power.[5]

When remains is whether § 1385 can be independently invoked in federal court as an assimilated "punishment" under the ACA.  In United States v. Bosser, 866 F.2d 315 (9th Cir. 1989) and United States v. Sylve, 135 F.3d 680 (9th Cir. 1998), the Ninth Circuit emphasized that a "commonsense" approach should be used to determine whether a state law can be characterized as "punishment."  866 F.2d at 317; 135 F.3d at 682-83.  Sylve also found this issue "best resolved" by looking to whether the state intended the statute in question to be a form of punishment.  135 F.3d at 683.

In California, a § 1385 dismissal which operates to dispose of the entire case against the defendant is not considered a "punishment."  "Rather, the dismissal operates to free the criminal defendant from further prosecution and punishment for that crime."  People v. Superior Court (Flores), 214 Cal. App. 3d 127 (1989).  "The defendant stands as if he had never been prosecuted for the charged offense."  See id.  That interpretation of the effect of § 1385 is logical since deeming it a punishment would be contrary to the commonsense view employed by the Ninth Circuit.

---

[5] White calls the court's attention to United States v. Heath, 260 F.2d 623 (9th Cir. 1958) to support the existence of an inherent power to dismiss.  But the Ninth Circuit never reached the merits of the dismissal in Heath because the appeal was ultimately dismissed on jurisdictional grounds.  260 F.2d at 632.  Moreover, the dismissal in question was alternatively characterized as one under Rule 48(b) for want of prosecution.  See id.

1    The magistrate judge relied on <u>Bosser</u> in determining that § 1385 is assimilated as an aspect
2 of state substantive criminal law.  Relying on <u>Bosser</u> and <u>Sylve</u>, White urges this court to do the
3 same.  But these cases are critically distinguishable, since the deferred acceptance statute at issue in
4 <u>Bosser</u> and the preconviction probation statute discussed in <u>Sylve</u> both required criminal defendants
5 to satisfy extraordinary conditions in order to obtain a dismissal.  For this reason, the Ninth Circuit
6 could easily find that those schemes simply substituted one penalty for another.  <u>Bosser</u>, 866 F.2d at
7 317; <u>Sylve</u>, 135 F.3d at 683.  The same substitution for the purposes of assimilation under the ACA
8 cannot be made here.

**V.    Conclusion**

In light of the foregoing, this court concludes that the dismissal of a criminal charge "in the furtherance of justice" cannot be supported either by the court's inherent supervisory powers or by assimilation of California Penal Code § 1385 into federal law through the ACA.  The magistrate judge therefore erred in dismissing the charge against White.

The order dismissing the information is REVERSED and the Government's Motion for Revocation is GRANTED.  This case is REMANDED to the magistrate judge for further proceedings consistent with this opinion.  The clerk of the court is directed to reopen this file.

**IT IS SO ORDERED.**

Dated:  April 27, 2012

_____
EDWARD J. DAVILA
United States District Judge

6
CASE NO. 5:11-cr-00501 PSG
ORDER REVERSING DECISION OF MAGISTRATE JUDGE; GRANTING PLAINTIFF'S MOTION FOR REVOCATION